Filed 7/17/24  In re K.G. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re K.G. et al., Persons Coming Under the Juvenile Court Law. | |
| KINGS COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>K.G.,<br><br>Defendant and Appellant. | F087592<br><br>(Super. Ct. Nos. 23JD0149, 23JD0150)<br><br>**OPINION** |

## THE COURT\*

APPEAL from a judgment of the Superior Court of Kings County.  Jennifer Lee Giuliani, Judge.

Laura D. Pedicini, under appointment by the Court of Appeal, for Defendant and Appellant.

Diane Freeman, County Counsel, and Thomas Y. Lin, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Detjen, Acting P. J., Meehan, J. and Snauffer, J.

# INTRODUCTION

K.G. (Mother) filed a timely notice of appeal following the termination of her parental rights to now two-year-old Kay. G. and 11-month-old Kan. G. (the children) under Welfare and Institutions Code section 366.26.[1] Mother's sole claim is that because the Kings County Human Services Agency (Agency) failed to conduct an adequate inquiry into whether the children are or may be Indian children, in compliance with section 224.2, subdivision (b), the juvenile court erred when it found that the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq. (ICWA))[2] did not apply, necessitating remand.

In accordance with this court's decisions, the Agency does not dispute either error or prejudice requiring remand. (*In re K.H.* (2022) 84 Cal.App.5th 566, 620 (*K.H.*); accord, *In re E.C.* (2022) 85 Cal.App.5th 123, 157 (*E.C.*).)

We accept the Agency's concessions and agree with the parties "that the juvenile court erred in finding the agency conducted a proper, adequate, and duly diligent inquiry, and that the error is prejudicial, which necessitates a conditional reversal of the court's finding that ICWA does not apply and a limited remand so that an inquiry that comports with section 224.2, subdivision (b), may be conducted." (*In re Jerry R.* (2023) 95 Cal.App.5th 388, 405 (*Jerry R.*), citing *K.H., supra*, 84 Cal.App.5th at p. 621 and *E.C., supra*, 85 Cal.App.5th at p. 157.)

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

# PROCEDURAL BACKGROUND[3]

## I. Referral, Petition and Detention

Mother and Father are married and in an intact relationship.[4] They have multiple prior child welfare referrals and a prior dependency case history that resulted in the termination of parental rights to a child. In addition, Mother's parental rights to another child were terminated in a separate dependency case.

On August 24, 2023, based on Mother's untreated mental illness, and Mother's and Father's engagement in domestic violence and substance abuse, the Agency filed a petition under section 300, subdivisions (b)(1)(D) (failure to protect due to substance abuse), (g) (no provision for support), and (j) (abuse or neglect of sibling).[5] The petition included Judicial Council form ICWA-010(A) stating that Mother and Father gave no reason to believe that the children are or may be Indian children.

At the detention hearing held on August 28, 2023, the juvenile court found a prima facie showing had been made that the children were persons described by section 300, and ordered them detained from Mother and Father and placed in the temporary custody of the Agency. Mother and Father stated in court, and each filed Judicial Council form ICWA-020 stating, that Indian status did not apply, and the court made a finding that ICWA did not apply.

---

[3] We include only a limited factual summary given that the sole issue on appeal is Mother's ICWA claim.

[4] Presumed father M.G. did not appeal.

[5] As addressed by Mother in her opening brief, the children were taken into protective custody via warrant (§ 340, subd. (a)), and this court held in *Jerry R.* that the ICWA inquiry mandated by section 224.2, subdivision (b), applies irrespective of the procedural mechanism under which a child is placed into government custody (*Jerry R., supra*, 95 Cal.App.5th at p. 426; accord, *In re Delila D.* (2023) 93 Cal.App.5th 953, 962, review granted Sept. 27, 2023, S281447). The Agency does not argue otherwise and, therefore, we need not address that issue.

## II.     Jurisdiction and Disposition Hearing

On October 4, 2023, the juvenile court held a combined, contested jurisdiction and disposition hearing at which Mother and Father testified.  The court sustained the petition allegations, and found the children as described by section 300, subdivisions (b), (g), and (j).  The court found by clear and convincing evidence that there is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the children if returned home, and there were no reasonable means by which their physical health could be protected without removing them from Mother's and Father's physical custody.  Reunification services for Mother and Father were bypassed under section 361.5, subdivision (b)(10), (11), and (13).  The court set a selection and implementation hearing under section 366.26.

## III.     Section 366.26 Selection and Implementation Hearing

On February 6, 2024, the juvenile court held a contested selection and implementation hearing at which Mother and Father testified.  The court found ICWA did not apply, the children were adoptable and the parental-benefit exception did not apply; terminated the parental rights of Mother and Father; and ordered the children be placed for adoption.  (§ 366.26.)

Mother filed a timely notice of appeal.

## DISCUSSION

## I.     ICWA and Duty of Inquiry Under California Law

### A.     ICWA

"ICWA was enacted in 1978 by Congress 'out of concern that "an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies." 92 Stat. 3069, 25 U.S.C. §1901(4).  Congress found that many of these children were being "placed in non-Indian foster and adoptive homes and institutions," and that the States had contributed to the problem by "fail[ing] to recognize the essential tribal relations of Indian people and the

4.

cultural and social standards prevailing in Indian communities and families." §§1901(4), (5). This harmed not only Indian parents and children, but also Indian tribes. As Congress put it, "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children." §1901(3).' (*Haaland v. Brackeen* (2023) 599 U.S. ___ [143 S.Ct. 1609, 1623] (*Haaland*); accord, *Mississippi Choctaw Indian Band v. Holyfield* (1989) 490 U.S. 30, 32–36 (*Holyfield*); *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8 (*Isaiah W.*).)

'"[ICWA] thus aims to keep Indian children connected to Indian families. "Indian child" is defined broadly to include not only a child who is "a member of an Indian tribe," but also one who is "eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." §1903(4). If the Indian child lives on a reservation, ICWA grants the tribal court exclusive jurisdiction over all child custody proceedings, including adoptions and foster care proceedings. §1911(a). For other Indian children, state and tribal courts exercise concurrent jurisdiction, although the state court is sometimes required to transfer the case to tribal court. §1911(b). When a state court adjudicates the proceeding, ICWA governs from start to finish. That is true regardless of whether the proceeding is "involuntary" (one to which the parents do not consent) or "voluntary" (one to which they do).' (*Haaland, supra*, 599 U.S. at p. ___ [143 S.Ct. at p. 1623]; accord, *Holyfield, supra*, 490 U.S. at p. 36.)

'"Involuntary proceedings are subject to especially stringent safeguards. See 25 CFR §23.104 (2022); 81 Fed. Reg. 38832–38836 (2016). Any party who initiates an "involuntary proceeding" in state court to place an Indian child in foster care or terminate parental rights must "notify the parent or Indian custodian and the Indian child's tribe." §1912(a). The parent or custodian and tribe have the right to intervene in the proceedings; the right to request extra time to prepare for the proceedings; the right to "examine all reports or other documents filed with the court"; and, for indigent parents or custodians, the right to court-appointed counsel. §§1912(a), (b), (c). The party

attempting to terminate parental rights or remove an Indian child from an unsafe environment must first "satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." §1912(d). Even then, the court cannot order a foster care placement unless it finds "by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." §1912(e). To terminate parental rights, the court must make the same finding "beyond a reasonable doubt." §1912(f).' (*Haaland, supra*, 599 U.S. at p. ___ [143 S.Ct. 1609, 1623–1624].)

"ICWA sets the minimum standards, providing, 'In any case where State or Federal law applicable to a child custody proceeding under State or Federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under this subchapter, the State or Federal court shall apply the State or Federal standard.' (25 U.S.C. § 1921; accord, Welf. & Inst. Code, § 224, subd. (d).) 'The minimum standards established by ICWA include the requirement of notice to Indian tribes in any involuntary proceeding in state court to place a child in foster care or to terminate parental rights "where the court knows or has reason to know that an Indian child is involved."' (*Isaiah W., supra*, 1 Cal.5th at p. 8, quoting 25 U.S.C. § 1912(a).) 'ICWA's notice requirements serve two purposes. First, they facilitate a determination of whether the child is an Indian child under ICWA.' (*Isaiah W., supra*, at p. 8, citing 25 U.S.C. § 1903(4).) 'Second, ICWA notice ensures that an Indian tribe is aware of its right to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding involving an Indian child.' (*Isaiah W., supra*, at p. 8, citing 25 U.S.C. §§ 1911(a), (c), 1912(a).)

"To facilitate notice in appropriate cases, federal law provides, 'State courts must ask each participant in an emergency or voluntary or involuntary child custody

6.

proceeding whether the participant knows or has reason to know that the child is an Indian child. The inquiry is made at the commencement of the proceeding and all responses should be on the record. State courts must instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.' (25 C.F.R. § 23.107(a) (2023).) California law requires more and, relevant to the issue raised here, imposes on counties a broad duty of inquiry into whether a child placed in the temporary custody of the county is or may be an Indian child. (§ 224.2, subd. (b).)

"**B.    Duty of Inquiry Under California Law**

"In 2006, 'persistent noncompliance with ICWA led [our state] Legislature … to "incorporate[] ICWA's requirements into California statutory law."' (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91, quoting *In re W.B.* (2012) 55 Cal.4th 30, 52 (*W.B.*).) "'In 2016, new federal regulations were adopted concerning ICWA compliance.'" (*K.H., supra*, 84 Cal.App.5th at p. 595, quoting *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 (*D.S.*) [citing 81 Fed.Reg. 38864 (June 14, 2016), revising 25 C.F.R. § 23 (2019)].) Prior to that time, 'neither ICWA itself nor the implementing federal regulations in effect … imposed a duty on courts or child protective agencies to inquire whether a child involved in a dependency proceeding was an Indian child.' (*In re T.G.* (2020) 58 Cal.App.5th 275, 289 (*T.G.*), citing *In re A.B.* (2008) 164 Cal.App.4th 832, 838 & *In re H.B.* (2008) 161 Cal.App.4th 115, 120.) '[F]ederal regulations governing ICWA … now require an ICWA inquiry be made at the inception of dependency proceedings, as well as at all proceedings that "may culminate" in foster care placement or termination of parental rights.' (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 323, fn. 11, citing 25 C.F.R. §§ 23.2(2), 23.107(a) (2022) & *In re Austin J.* (2020) 47 Cal.App.5th 870, 883.)

"Subsequently, the California Legislature enacted Assembly Bill No. 3176,[6] effective January 1, 2019, which '"made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements."' (*K.H., supra*, 84 Cal.App.5th at p. 595, quoting *D.S., supra*, 46 Cal.App.5th at p. 1048 [citing Assem. Bill 3176 & *In re A.W.* (2019) 38 Cal.App.5th 655, 662, fn. 3].) In relevant part, Assembly Bill 3176 repealed former sections 224.2, pertaining to notice, and 224.3, pertaining to inquiry, and reenacted them in different form. (Stats. 2018, ch. 833, §§ 4–7.) Section 224.3 now governs notice and section 224.2 inquiry.[7]

"Now, as then, California law expressly recognizes 'There is no resource that is more vital to the continued existence and integrity of Indian tribes than their children, and the State of California has an interest in protecting Indian children who are members or citizens of, or are eligible for membership or citizenship in, an Indian tribe. The state is committed to protecting the essential tribal relations and best interest of an Indian child by promoting practices, in accordance with the federal Indian Child Welfare Act of 1978 (25 U.S.C. Sec. 1901 et seq.) and other applicable state and federal law, designed to prevent the child's involuntary out-of-home placement and, whenever that placement is necessary or ordered, by placing the child, whenever possible, in a placement that reflects the unique values of the child's tribal culture and is best able to assist the child in establishing, developing, and maintaining a political, cultural, and social relationship with

---

**6**    "Assembly Bill No. 3176 (2017–2018 Reg. Sess.) (Assembly Bill 3176)." (*Jerry R., supra*, 95 Cal.App.5th at p. 410, fn. 11.)

**7**    "Section 224.2 was subsequently amended by Assembly Bill No. 686 (2019–2020 Reg. Sess.), effective January 1, 2020; Assembly Bill No. 2944 (2019–2020 Reg. Sess.), effective September 18, 2020; and Assembly Bill No. 2960 (2021–2022 Reg. Sess.), effective January 1, 2023. Those amendments did not affect subdivision (b) of section 224.2, however." (*Jerry R., supra*, 95 Cal.App.5th at pp. 410–411, fn. 12.)

the child's tribe and tribal community.' (§ 224, subd. (a)(1).)[8] Assembly Bill 3176 revised and recast the duties of inquiry and notice, in accordance with federal law, and, relevant to inquiry, 'revise[d] the specific steps a social worker, probation officer, or court is required to take in making an inquiry of a child's possible status as an Indian child.' (Legis. Counsel's Dig., Assem. Bill 3176, Stats. 2018, ch. 833, p. 1.)

"As this court summarized in *K.H.*, '"[n]otice to Indian tribes is central to effectuating ICWA's purpose ….'" (*In re T.G.* (2020) 58 Cal.App.5th 275, 288 (*T.G.*), citing *Isaiah W., supra*, [1 Cal.5th] at p. 8.) However, it is typically "not self-evident whether a child is an Indian child" (*Benjamin M., supra*, 70 Cal.App.5th at p. 741), and "the question of membership is determined by the tribes, not the courts or child protective agencies" (*T.G., supra*, at p. 294). To ensure notice in cases in which it is known or there is reason to know an Indian child is involved (25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3, subd. (a)), the law imposes an affirmative and ongoing duty to inquire whether a child subject to dependency proceedings is or may be an Indian child (§ 224.2, subd. (a))' (*K.H., supra*, 84 Cal.App.5th at p. 588), and following the passage of Assembly Bill 3176, 'agencies now have a broader duty of inquiry and a duty of documentation' (*K.H., supra*, at p. 588, fn. omitted, citing § 224.2, subd. (b) & [Cal. Rules of Court,] rule 5.481(a)(5)).[9]" (*Jerry R., supra*, 95 Cal.App.5th at pp. 407–411.)

## II. Standard of Review

"'The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, "subject to reversal based on sufficiency of the evidence.'" (*K.H., supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C., supra*, 85 Cal.App.5th at p. 142; *Adoption of M.R.* (2002) 84 Cal.App.5th 537, 542;

---

[8] "Assembly Bill 3176 only effected minor technical changes to section 224, subdivision (a)(1)." (*Jerry R., supra*, 95 Cal.App.5th at p. 411, fn. 13.)

[9] All further references to rules are to the California Rules of Court.

rule 5.482(c).) First, '[t]he court must find there is "no reason to know whether the child is an Indian child," which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply.' (*K.H., supra*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C., supra*, at p. 143; rule 5.482(c)(1).) Second, '[t]he juvenile court must … find a "proper and adequate further inquiry and due diligence .…"' (*K.H., supra*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C., supra*, at p. 143; rule 5.482(c)(1).)

"The juvenile court's finding on the second element 'requires the … court to "engage in a delicate balancing of" various factors in assessing whether the … inquiry was proper and adequate within the context of ICWA and California law, and whether … [there was] due diligence.' (*K.H., supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C.* (2021) 11 Cal.5th 614, 640; accord, *E.C., supra*, 85 Cal.App.5th at p. 143; *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005.) Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion. (*K.H., supra*, at p. 589; accord, E.*C., supra*, at p. 143; *In re Ezequiel G., supra*, at p. 1003.)" (*Jerry R., supra*, 95 Cal.App.5th at p. 427.)

## III. Analysis

### A. Error

"Although complying with the duty of inquiry and documentation under ICWA is unlikely to 'prove onerous' in most cases [citation], in no event may we interpret the law to relieve the court or the agency of complying with the plain directives imposed by statute and rule (*K.H., supra*, [84 Cal.App.5th] at p. 620; see § 224.2; rules 5.480–5.482). There may be cases in which there is no one else to ask beyond the parents [and a few relatives], but, if that is so, the record must be developed to reflect that fact and supported by documentation. (Rule 5.481(a)(5).) Properly developed and documented, 'the court has relatively broad discretion to determine [that] the … inquiry was proper, adequate,

10.

and duly diligent on the specific facts of the case.' (*K.H., supra*, at p. 589; accord, *E.C., supra*, 85 Cal.App.5th at p. 157.)" (*Jerry R., supra*, 95 Cal.App.5th at p. 428.)

In this case, in August 2023, Mother and Father denied Indian ancestry and the juvenile court found that ICWA did not apply. In February 2024, during the section 366.26 hearing, the Agency represented that although Mother and Father denied Indian ancestry, this court reversed two prior dependency cases for ICWA error, and the Agency provided the court with an ICWA inquiry report for the court's file.[10] The court again found that ICWA does not apply.

Mother claims the record does not reflect the Agency conducted the proper, adequate and duly diligent inquiry required under section 224.2 and, therefore, the juvenile court erred in finding that ICWA does not apply. (§ 224.2, subds. (b), (i)(2); rules 5.481(a)(5), 5.482(c).) She points out that there were family members to inquire of, and the Agency's jurisdiction and detention report specifically reflects she has a "good" relationship with maternal grandmother and grandfather, and an "okay" relationship with her two siblings, one of whom is a minor and lives with maternal grandmother and one of whom is an adult who resides in Texas. The Agency concedes the issue on the ground that although it made an ICWA inquiry of some family members,[11] it was contacted by other family members and failed to inquire of them.

Notably, some of the information in the Agency's ICWA report, which was collected in 2020, appears out of date given the information Mother more recently provided to the Agency in September 2023. The ICWA report also reflects a voicemail message was left for maternal grandmother a mere one day before the section 366.26 hearing, but in September 2023, Mother reported maternal grandmother visited the

---

[10] The ICWA report reflects that Mother previously claimed possible Indian ancestry with the Cherokee tribe on her father's side.

[11] The ICWA report reflects the Agency had contact with Mother's paternal aunt in 2020, and she stated the family may have Indian ancestry, but she has no concrete information.

children and wanted placement, suggesting that maternal grandmother *is* reachable. Moreover, notwithstanding Mother's denial of Indian ancestry during this dependency proceeding, the report reflects that in 2020, she stated the children may have Indian ancestry on her father's side with the Cherokee tribe. Under these circumstances, more is required of the Agency and we accept its concession of error.

## B.    Prejudice

Mother also argues, and the Agency does not dispute, that the error is prejudicial. "[U]under California law, '"[n]o judgment shall be set aside … for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.)' (*K.H., supra*, 84 Cal.App.5th at p. 606; accord, *E.C., supra*, 85 Cal.App.5th at p. 151.) 'California law generally interprets its constitutional miscarriage of justice requirement "as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error" (*In re Celine R.* [(2003)] 31 Cal.4th 45, 60 …, citing [*People v.*] *Watson* [(1956)] 46 Cal.2d [818,] 836; accord, *In re Christopher L.* (2022) 12 Cal.5th 1063, 1073 (*Christopher L.*); [*In re*] *A.R.* [(2021)] 11 Cal.5th [234,] 252).' (*K.H., supra*, at p. 607; accord, *E.C., supra*, at p. 152.)

"Courts '*generally* apply a *Watson* likelihood-of-success test to assess prejudice, [but] a merits-based outcome-focused test is not *always* appropriate because it cannot always adequately measure the relevant harm.' (*K.H., supra*, 84 Cal.App.5th at p. 609, citing *In re A.R., supra*, 11 Cal.5th 234, 252–253 (*A.R.*); accord, *E.C. supra*, 85 Cal.App.5th at pp. 153–154.) '[W]here the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect.' (*K.H., supra*, at p. 609, citing *A.R., supra*, at p. 252; accord, *E.C., supra*, at p. 154.)

"""ICWA compliance presents a unique situation"' (*K.H., supra*, 84 Cal.App.5th at p. 608, quoting *In re K.R.* (2018) 20 Cal.App.5th 701, 708; accord, *E.C., supra*, 85 Cal.App.5th at p. 152), because 'ICWA is not directed at reaching, or protecting, a specific outcome on the merits' (*K.H., supra*, at p. 609; accord, *E.C., supra*, at p. 154). Rather, "'[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings" ([*In re*] *N.G.* [(2018) 27 Cal.App.5th 474,] 484, citing *In re K.R., supra*, at p. 708), and an adequate … inquiry facilitates the information gathering upon which the court's ICWA determination will rest.' (*K.H., supra*, at p. 608; accord, *E.C., supra*, at pp. 152–153.) Here, the appealing part[y is Mother] and [she does] not bear the burden of complying with ICWA requirements. (Rule 5.481(a); see *K.H., supra*, at p. 608; *E.C., supra*, at p. 153.) Further, the ultimate determination whether a child is an Indian child rests with the tribe. (*K.H., supra*, at p. 596; accord, *E.C., supra*, at pp. 139–140.)

"As we recognized in *K.H.*, 'the duty of inquiry is a continuing one (§ 224.2, subd. (a)[; rule 5.481(a)], … [but] if the inquiry is inadequate at the outset, the likelihood that the opportunity to gather relevant information will present itself later in the proceeding declines precipitously.' (*K.H., supra*, 84 Cal.App.5th at p. 609; accord, *E.C., supra*, 85 Cal.App.5th at p. 154.) 'The relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so that they may make that determination. It necessarily follows that [in the context of ICWA and consistent with *A.R.*,] the prejudice to those rights lies in the failure to gather and record the very information the [lower] court needs to ensure accuracy in determining whether further inquiry or notice is required, and whether ICWA does or does not apply.' (*K.H., supra*, at p. 591; accord, *E.C., supra*, at p. 154.) '[W]here the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due

diligence, reversal for correction is generally the only effective safeguard.' (*K.H., supra*, at p. 610, citing *A.R., supra*, 11 Cal.5th at pp. 252–254; accord, *E.C., supra*, at p. 155.)" (*Jerry R., supra*, 95 Cal.App.5th at pp. 429–431.)

"Under these circumstances, [the] inquiry …'fell … short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law, and remand for correction is required.' (*K.H., supra*, 84 Cal.App.5th at p. 620, citing *A.R., supra*, 11 Cal.5th at pp. 252–253; accord, *E.C., supra*, 85 Cal.App.5th at p. 156.) 'A finding of harmlessness on this record would necessarily require speculation and "is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes."' (*E.C., supra*, at p. 155, quoting *K.H., supra*, at p. 611.)" (*Jerry R., supra*, 95 Cal.App.5th at p. 431.)

Of final note, "our decisions in *K.H.* and *E.C.* should not be interpreted as requiring the juvenile court to ensure 'an exhaustive search for and questioning of every living relative of [the children].' (*K.H., supra*, [84 Cal.App.5th] at p. 621; accord, *E.C., supra*, 85 Cal.5th at p. 157.) 'So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding.' (*K.H., supra*, at p. 621, citing § 224.2, subd. (i)(2); accord, *E.C., supra*, at p. 157; rule 5.482(c).)" (*Jerry R., supra*, 95 Cal.App.5th at p. 431.)

**DISPOSITION**

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the court for the limited purpose of ensuring compliance with the inquiry and documentation provisions set forth in section 224.2 and rule 5.481. If, after determining that an adequate inquiry was made, the court finds that ICWA applies, the court shall proceed in compliance with ICWA and related California law. If the court instead finds that ICWA does not apply, the court shall reinstate its ICWA finding.